United States v. Montano is next. Good morning, and may it please the Court, Andrew Huff representing the appellant Nicholas Montano. I'd like to reserve two minutes for rebuttal, Your Honor. Your Honors, this case should be sent back to the District Court for dismissal or for new trial for three reasons. First, the Speedy Trial Act was violated, and that mandates dismissal. Second, after the trial in this matter, Your Honors, four witnesses came forward with credible information that the government's two star witnesses, Tristan White and Joshua Claus, essentially colluded to lie about Montano's involvement in their conspiracy to distribute drugs. And if this new evidence were brought to a new jury, the outcome of the case would be changed. And third, Your Honor, the District Court erred in its decisions allowing into trial evidence of meth found in a backpack and evidence of meth found in a public stairwell. Turning first, Your Honors, to the Speedy Trial Act violation. On January 16th, Your Honors, the government submitted a motion to continue trial in this matter five days before trial was set to begin on January 21st of 2020. They cited in their motion basically that they were not prepared for trial and that they failed to obtain their witnesses for trial. As an excuse for this failure, Your Honor, they complained about the District Court not setting a trial date until January 13. They said it was impossible for them to prepare for trial because that trial date had not been set before that time. And they also asserted that the defense counsel below had promised essentially to file a motion for continuance and then did not do so. And they relied on that to their detriment. Now, obviously, this Court knows that the government's failure to prepare for trial and to obtain witnesses is not an excuse under the Speedy Trial Act for ends of justice continuance. With respect to the trial date, Your Honor, the government . . . But counsel did contact or email government counsel indicating that it was counsel's expectation that the defendant would not proceed to trial, right, and that counsel be filing a motion for continuance. Is your argument that the government is not entitled to rely on that in any way? Your Honor, the argument is more factual than that. The defense counsel did contact the counsel for government on January 13 when it was obvious trial was going to take place eight days hence. And the defense counsel said, I'm thinking about a motion for continuance, but he also noted, I have to get permission from my client. He did not have permission from his client at that time. He told counsel for the government he needed permission. And there was a two-day delay to get that permission because Mr. Montano was being transported from Billings to Great Falls. So he was incommunicado. But as soon as defense counsel communicated with his client and his client said, no way, I want to go to trial, he conveyed that to attorney for the government. So there was never any promise to file a motion for continuance. All there was was a, it was floated, but it was clear that his client would have to agree. Counsel, it seems like the district court credited the reliance on the defense counsel for the two days of delay, then gave a 20-day extension. But so that seems odd to me, but it doesn't seem like you're challenging the length of the delay. From the, until February 20th, your honor? Well, I think it was a 20-day delay. Right. Right. No. You're not challenging the length of the delay. Our challenge is to the fact that they granted the continuance at all. I'm sorry? Our challenge is to the fact that the district court granted the continuance at all. And what's, what is important here is that as of October 25th of 2019, 80 plus days before, when the district court set December 13th as a day for hearings on the evidentiary motions, your honor, as of that date, all the parties knew several things. First, that once those evidentiary motions were decided, there'd only be eight days left on the speedy trial clock. And once the court said December 13th is the hearings date for those motions, you basically have to decide those within 30 days. The court decided on January 13th, exactly 30 days later. So the government knew precisely when that decision would be coming down. So it knew for 80 plus days, it had to get prepared for trial. And yet on January 16th, it filed a motion for continuance and said, we're not prepared for trial. We don't have our witnesses. It had all that time to get prepared. And that issue was not assessed by the district court. And it was never kind of part of the assessment here, mainly because the district court decided to grant that continuance without ever having heard from the defense. The government made the motion on January 16th. Court granted it on January 17th and never heard from the defense, even though it was a contested motion on the Sixth Amendment speedy trial right of Mr. Montanio. So that in itself was also error. There needed to be, on a contested motion, a hearing from both parties, your honor. What's the basis of that statement? Well, I think it's just basic due process, your honor. Also, U.S. v. Lloyd, there has to be, the court has to make a substantial independent factual inquiry before it can make a motion's ends of justice continuance, your honor. And when you have a disputed motion on a constitutional right, you have to hear from both sides. It's disputed. There's not really a factual dispute, was there? I mean, it was a disputed motion. The government set out in its motion what the facts were. So I understand you would have had arguments to make, but you didn't contest its description of defense, did you? Well, I think we, yes, your honor. Because basically the basis of the government's motion was, I was promised a motion for continuance. I relied on that to my detriment, and one was never forthcoming. Plus, there were two wasted days here, and it's the defense counsel's fault. He was never promised a motion for continuance. All that the defense counsel said was, I'll file one if my client agrees. And I have to get, it was very clear I had to get permission from my client. And as soon as he understood from his client that that was not going to be a possibility, he conveyed that to attorney for the government. Also, just generally, I mean, the government should have been prepared on January 13th to go to trial, or before. It's not entitled to rely on any motion for continuance. Continuance motions can always be denied. It was its obligation under the Speedy Trial Act to be prepared, and it was not prepared. Turning, your honor, to the motions for new trial, your honor. After trial, four witnesses came forward, Yarbrough, Meese, Lindell, and Nymox. And they all came forward with basically the same story, that the government's two-star witnesses, Tristan White, Joshua Claus, colluded to make up information about Montano's involvement in their conspiracy. And they did that to get a break on their sentences. And indeed, it worked. Tristan White wasn't even indicted. And Mr. Claus was looking at a 35-year sentence, and he ultimately got 15 years. There's no dispute, really, that this information was newly discovered, except for Nymox. There's a little bit of dispute over that. But essentially, the import of the Nymox evidence is that after he came forward, you know, it was understood that it goes to essential elements of this case. So it became relevant after he came forward. There was no lack of diligence, your honor, in discovering this. There is a dispute over the materiality of these witnesses and their statements. Essentially, the court below said it was hearsay and immaterial. But hearsay is not the question, your honor. The question is whether it's relevant and admissible. It's definitely relevant. It goes straight to the heart of the government's case, your honor. If a new jury were to hear this testimony, and if White and Claus would be cross-examined on it, it goes to the conspiracy case. In this case, your honor, the only evidence of a conspiracy came from the testimony of White and Claus. There was no other evidence. Maybe I misunderstood what you said about the relevance of its admissibility or not. At the part of the analysis where we look at, you know, whether it would have made a difference when a new jury heard it. If it's not admissible, the new jury wouldn't hear it. So, what am I missing there? So, your honor, the district court said it's hearsay. Now, both my brief below and my briefs to this court, I gave several hearsay exceptions under which it could come in. And for whatever reason, the district court said you didn't give any hearsay exceptions. I did. It's in the briefs. It's also in the briefs here. I think that was the problem. What's that, your honor? If I recall correctly, I thought it was just a string site. Well, it was one sentence saying this could come in under hearsay exceptions, and it listed several hearsay exceptions. But it didn't give any analysis of why they applied. Right, right. But it was there. I mean, there was a statement saying this can come in under hearsay exceptions, your honor. So, the district court just ignored that and said it was hearsay. Also, your honor, the district court held that it was merely impeaching. But under U.S. v. Davis, if impeachment evidence is so powerful, it destroys the credibility of a key witness's testimony. And if the import of that is it undermines essential elements of the case that the government has to prove, then it can come in. So, U.S. v. Davis says if it's very powerful impeachment, it can come in. The combination of all of that, your honor, does lead to likely acquittal here. If this new evidence were to come before a new jury, your honor, the conspiracy case can't be proven. Or at least it's totally undermined. Because the only evidence of conspiracy are the statements of Joshua Claus and Tristan White. And this completely undermines that. With respect to intent to distribute, it also undermines that. Because that was motivated primarily by this conspiracy claim from White and Claus, your honor. And just lastly, moving to the decisions on evidence, your honor, there was a motion to suppress meth found in a backpack. There was also a motion in limine for meth found in a public stairwell. With respect to the inventory search of Montano's backpack, your honors, the error that was made here is that the district court did not assess Montana law on inventory searches. So inventory searches are one of the rare exceptions that state law has to be assessed in order to determine whether the Fourth Amendment has been violated in an inventory search. Here, your honor, state law is very different from federal law. In Montana, Article II, Sections 10 and 11, Montanans have an explicit right of privacy. It's a fundamental right that can't be infringed without a compelling state interest. So under Montana law, State v. Hamilton, inventory searches have a different balancing. Under federal law, basically, the law enforcement's interest in conducting an inventory search is held to outweigh the arrestee's privacy rights. But under state law, your honor, it's the privacy rights that outweigh law enforcement's interest in an inventory search. But even under state law, you can do the search if you don't know who it belongs to, right? That's exactly right. You can do a search. And the district court made a finding that they hadn't, I mean, you dispute it, but the district court made a finding that they hadn't yet identified the identity of the person who owned the backpack. So we would have to find that that was clearly erroneous. Right, your honor. And all you have to do to make that finding, your honor, is look at the record. Basically, while the police were on scene, when they took the backpack into custody, they figured out who the backpack belonged to. It's right there in the record. They had a name, Nicholas Montaniel. They ran with dispatch whether there are any warrants pending. They found out, yeah, there's a warrant pending for Nicholas Montaniel. So there was a lot of discussion on scene about Nicholas Montaniel owning this backpack. The kind of attempt to retroactively manufacture ambiguity about whether they actually figured that out or not, I think, is completely contradicted by just a look at the record. So they knew the identity of the owner of the backpack. And instead of calling him and saying, we have your backpack, they went ahead and did this inventory search, which is not allowed under Montana law. And it's also, frankly, not allowed under their own inventory search policy. So it was a violation in both respects, your honor. Did you want to save a little bit of time? Yes, I do, your honor. Thank you. Good morning. May it please the court. Thomas Godfrey with the District of Montana for the United States. I want to first talk about the speedy trial issue that's been raised on appeal here. First of all, the defense makes this claim that there was this factual dispute over whether the defense counsel had indicated he was going to file a motion to continue. Looking at the email, defense counsel indicated he was going to be out of town. He asked the government's position. On a motion to continue, he indicated he did not think his client was going to have any issues with this. And based upon that email stating he wasn't even going to be available for the trial, and additionally, the government defense counsel talking about how counsel was already in a trial that week, it was completely reasonable for the government to rely on that as an assertion that he was going to continue the trial. And the government in the next day, after this motion is not filed and the trial date was coming up so quickly, attempted to reach out to counsel. No response. Then the next day, again, even from the counsel's own affidavit, he had missed calls from the government. He finally gets a hold of his client and calls the government back in the evening and indicates I'm not going to continue this trial. At that point, the government tells counsel that the government is going to file a motion to continue the trial, and counsel indicates his opposition. I think that's important for the other reason in this, him arguing he didn't have an opportunity to respond. He was aware the government was going to be filing the motion. The government filed it the next day, the same day that the court reached out to counsel asking, do you intend to go to trial in this case or not? And defense counsel, by his own affidavit, gets back late in the evening around 11 p.m. and responds to these and indicates due to the trial he had that week, he was too tired to file any motion. The court has essentially the Friday prior to trial to decide what to do. Counsel was aware the government was going to file the motion. Even assuming that that reliance is reasonable, the district court made a finding that that cost the government crucial two days of the seven days available was the district court's finding. But the continuance extended well beyond that. The part that I find harder to understand is the finding that the government only had five days to complete significant trial preparation, prepare trial documents, exhibits, review evidence. Shouldn't the government have done that well in advance of even this email communication that it received from defense counsel, which was, I think, on the 13th? Correct, Your Honor. That email was on the 13th. And certainly, the government is always preparing for trial in advance. However, in most cases, the weeks prior to trial, there's a great deal of prep that goes on because a lot of things such as trial documents, figuring out witnesses, if things have come up with availability, there's a lot of prep that goes on in that time. And the government could have gone to trial had the court denied the continuance. It would have been extremely difficult. And certainly, some witnesses that may not have been available, the government would not have been able to call if the government could not get them there. But I think that what we're looking at here between the issue of when the court sets it out the three weeks, the issue first is whether the granting of the continuance was appropriate. And I think given the government's reliance on defense counsel that he's going to continue this trial in this week where both sides are preparing, it's reasonable for the government to believe counsel and to think this trial is going to be continued for that period of time. So I think looking at that one, and then turning to the court's question regarding... So counsel, even if that's correct, you relied two days on defense counsel's representation, but why would you get 20 days to then go to trial? Well, I think a lot of that depends on the court's calendar in terms of setting out what trials it has. Additionally, this court has found delays much lengthier than that period of time in months to be allowable in this situation. We had a brief delay of three weeks for the trial to be set. So I think that in terms of the delay, a lot of that depends on what is going on in the court. And looking at the case law, a three-week delay isn't a length of time that's so unreasonable for the court to set it out. Well, it's a third of the speedy trial clock time. So it seems pretty significant to me. It's certainly three weeks, Your Honor. However, I would point to the case law that has found significant periods of time to be allowable. I would also like to address the issue of him not having the opportunity to respond. He did file a response. In this case, he filed it on January 31st, which I believe was 10 days after the trial was intended to go. Attached the emails and the affidavit. And the court addressed that again after doing its initial order, granting the government's motion to continue on the first day of trial. That's excerpt of the record 59, where the court noted it looked at these documents and maintained that its decision was correct. So the court had the opportunity again to review the facts and did not find there was any dispute in terms of the court did not find the government had misrepresented what defense counsel had said. And that defense counsel hadn't indicated they were going to continue. The court maintained that it was reasonable for the government to rely on that. Unless there are further questions on the speedy trial. Before the email by defense counsel, was it the party's expectation that trial would proceed on January 21, the last day under the Speedy Trial Act, absent a waiver? Well, what happened, Your Honor, is the parties got the order and then on the denial of the motion to suppress. So at that point, because of the speedy trial clock, the trial had to be set for that date and that's why the parties reached out and then the government was told that counsel was going to continue. And it's clear that counsel for the defense did not think it was going to go on that day because he had scheduled himself to be out of town on that date, which is in the email where he asked the government's position on the motion to continue. So it cuts the other way too in saying, well, the government should have assumed it was going to go on this date. No matter what the defense counsel said, defense counsel has scheduled to be out of town for that trial date. So clearly, it was the expectation of the parties prior to that Wednesday in the evening that that trial was not going to go on that date. Are there any other questions regarding the speedy trial issue? I'd like to next talk about the inventory search. First, I'd like to note that the Billings Police Department inventory policy does track Montana Supreme Court case law in Hamilton, Pastos, and de Montaigne exactly following Montana's greater expectation of privacy in this case. The district court did find that officers did not know who the bag belonged to and that's absolutely correct looking at the record in this case. Ms. White stated that she thought it belonged to a Nick Montoya. That's not the defendant's name. Officers certainly suspected based on her description of this individual that maybe it was this individual, Mr. Montoya, that they thought was involved with drugs. But that's a great leap from having a suspicion that a bag may belong to someone to we know that this bag belongs to this individual. So I think if the court looks at the record in this case, excerpts of the record 38 and 39, it's not clear error by the court to find that the officers did not know who the bag belonged to and in that circumstance under Montana law, inventorying the bag, especially in a circumstance which isn't addressed in Hamilton where there is evidence that there's a danger here. The individual who said it was maybe this guy Nick Montoya's bag, there's probably drugs in there. They found a pistol holster in the vicinity. So unlike in Hamilton where we had this wallet and the Supreme Court of Montana notes how there aren't these objective facts that there might be a danger here, we do have objective evidence that there could be a danger to evidence technicians putting the bag away. So certainly in that circumstance as in their inventory search policy, inventorying the bag for indications of ownership as well as to make the bag safe for evidence technicians while it was stored was certainly appropriate. Does the court have any questions regarding the inventory search policy? Okay. Next, I want to cover the motion in limine regarding the methamphetamine that was found in the stairwell. In this case, officers were pursuing Mr. Montano who was fleeing a stolen vehicle. He wrecks the vehicle. Inside the vehicle, there's baggies, drug paraphernalia found. There's a foot pursuit that goes into this apartment complex that's three levels and six apartments, so two for each level. And his argument for the motion in limine was this bag of drugs wasn't found where he was found hiding in a woman's apartment on the lower level. But by his own admission to the officers at the time, he'd knocked on every door in that apartment complex. He'd been all over that apartment complex. He was fleeing from police as the district court found. And the officer stated at the hearing, individuals often discard items that are going to incriminate themselves when they're trying to flee from officers, certainly in a circumstance where they're essentially cornered in an apartment building and police are right behind them. So the district court did not abuse its discretion allowing that evidence in a trial. Does the court have any questions regarding that issue? It doesn't appear that we do. Okay. Finally, I'd like to address his motions for a new trial. First of all, two of his bases for a new trial, Mr. Nimmock and then his argument regarding the money that the court did not forfeit is not newly discovered evidence. First, Mr. Nimmock, as the district court noted, that information was provided in the original discovery with the case. So it was not newly discovered evidence. Additionally, it is only impeachment evidence. And his information regarding his work at the Redmond shophouse and billings being the basis for him having that money is certainly not newly discovered evidence because that was his testimony at the forfeiture hearing regarding the work he had done in the past. So that on its own, on those two, it certainly cannot meet the standard. The other witnesses, Lindell, Meese and Yarbrough is all impeachment. These are all individuals who were involved in selling drugs. And Mr. Lindell had previously been indicted and had been Mr. Montano's cellmate and are all essentially saying the same thing, that Ms. White and Mr. Klaus are making up these allegations just to get benefits from the government. And as the government noted in its brief, the fact that these individuals were cooperating with the government and Mr. Klaus certainly was looking to get a 5K or some other relief from the government was brought to the attention of the jury. So in the first part, it's just impeachment because they're not testifying regarding, they wouldn't be testifying regarding any witnessing or anything. They're just saying these two individuals are, you know, decided they were going to lie about what Mr. Montano was up to to benefit themselves. Second, I'd like to point out that it's not correct to say that the only evidence of conspiracy in this case was Mr. Klaus and Ms. White. The government had the defendant's cell phone where there were text messages of with him conspiring to sell five ounces of methamphetamine, which is certainly much better evidence of conspiracy than someone who is cooperating with the government who's admitted he's a drug dealer himself and involved in dealing much more methamphetamine than Mr. Montano was on trial for. But his actual cell phone where there was the discussion of the selling of five zips, which the testimony of trial indicated a zip was drug slang for an ounce of methamphetamine, is evidence of the defendant conspiring to sell methamphetamine in quantities consistent with the methamphetamine that was found. Did you have a question, Your Honor? I'm sorry. So I think, and that cuts again to the evidence must indicate that a new trial would result in acquittal. Here in this case, we had two separate incidents of Mr. Montano. His, he had his flight, the significant quantity of methamphetamine being found, the evidence on his cell phone indicating drug sales. So that on its own was the strongest evidence of the defendant's guilt in this case. And again, all these witnesses just relate to impeachment of two witnesses that had already been impeached and had already testified that they were cooperating with the government. Does the court have any other questions on any of these issues for me? It doesn't appear that we do. Thank you, Your Honors. I will defer to my briefs. Thank you very much. Your Honors, the government spends a lot of time parsing eight days before the January 21st trial setting. But the fact of the matter is they knew for 80 plus days that a trial was coming down the tracks. And they should have been prepared. They should have been preparing the entire time. And they have not given any sort of reasonable excuse for why on January 13, they file a motion saying we're not ready for trial and we haven't obtained our witnesses, Your Honor. In terms of the delay until the actual trial took place, that clearly indicates that they needed that three weeks of time to get ready, which means they weren't even close on January 13, which means they hadn't done a thing before that day came upon both the prosecution and the defense, even though everybody was aware it was coming and trial was going to take place eight days later. With respect to Mr. Montano, his previous defense counsel filing response some days later, obviously, the district court decided without hearing from him the very next day. He filed that response so that he could make a record about what actually happened. And then when he moved to dismiss just prior to trial, the court, again, did not make any sort of factual findings or record. It basically just said we are denying it based on what we decided before. Can I ask you to clarify what you said a moment ago about the length of the continuance? I think you answered Judge Pimentel's question earlier that you're not, your objection would be equally applicable had it been one extra day. You're just citing the length as evidence of what it suggests about the reason for the continuance. Right. That's exactly right, Your Honor. And the other thing to note about the length of the delay, the government cites in its brief several cases about the reasonableness of a length of a delay and prejudice to the defendant, but that's not the right assessment here. All the cases cited in the government's brief are about co-defendants. When one defendant asks for a delay that impacts the other defendant. In this case, that's not what happened here. So all of those cases are basically inapplicable to the facts here. And remind me, did the defense ask for a shorter continuance? I know you objected to continuance period, but if the court were to grant one, did you ask for a shorter period of time? No, the defense never got an opportunity to ask for any continuance. And in fact, the defense was going to be ready to go on January 21. He filed his jury instructions, you know, in his verdict forms on January 15. So the defense was going to be ready to go on January 21. It did not need a continuance, Your Honor. All right. I'm out of time. You're over time. Thank you. Did you have anything else to add? No, Your Honor. I think that'll do it for today. Thank you very much. Both sides for your argument. The matter is submitted for decision.
judges: NGUYEN, MILLER, BUMATAY